UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LOCAL 355 UNITED SERVICE WORKERS
UNION, INTERNATIONAL UNION OF
JOURNEYMEN AND ALLIED TRADES and
UNITED WELFARE FUND, WELFARE
DIVISION, *and the Trustees Thereof*,

                Petitioners,　　　　　**REPORT & RECOMMENDATION**
　　　　　　　　　　　　　　　　　　　　**18 CV 1849 (LDH) (LB)**
   -against-

AIRCON ENTERPRISES, INC., *also known as
Aircon Enterprises, Inc., Directaire*,

                Respondent.
-------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Petitioners Local 355 United Service Workers Union, International Union of Journeymen and Allied Trades ("Union") and the United Welfare Fund—Security Division and Union Welfare Fund—Welfare Division ("Funds") and the trustees thereof ("Trustees") bring this action against respondent Aircon Enterprises, Inc. ("Aircon") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1145 and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, *et seq.*; Petition to Confirm An Arbitration Award ("Petition" or "Pet."), ECF No. 1. Petitioners initially brought this action against respondent to confirm an arbitration award which respondent had not complied with. The award compelled respondent to submit to an audit to determine whether they were fulfilling their obligations under ERISA and the LMRA. Pet.; Opinion and Award of Arbitrator, ECF No. 1-1. Despite proper service of the summons and the Petition in this case, respondent has failed to plead or otherwise defend this action. The Honorable LaShann Judge DeArcy Hall adopted my Report and Recommendation granting petitioners' motion for a default judgment on August 21, 2019. Docket Entry 8/21/2109. Judge DeArcy Hall ordered respondent to turn over its books and records to petitioners for an audit

1

to determine if Aircon had violated ERISA and/or the LMRA and if so, the amount of damages petitioners are owed. Id. As set forth in the Court's Order, if respondent did not submit to the audit, petitioners were permitted to estimate the amount of damages they were owed, and to file a motion for a supplemental default judgment on damages. Id.

Petitioners now move for a supplemental default judgment on damages. Motion for Damages ("Mot."), ECF No. 18. Judge DeArcy Hall referred petitioners' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that petitioners' motion for damages should be granted and petitioners should be awarded $125,097.95 plus daily interest from August 1, 2020 though the date the Court enters a final judgment in this action.

## BACKGROUND AND PROCEDURAL HISTORY

The Court references the facts set forth in the prior Report and Recommendation and assumes the parties' familiarity with the Report. ECF No. 14. In summary, the Union and Aircon are parties to a collective bargaining agreement ("CBA"), and the Union requested that Aircon submit to an audit to ensure it was complying with its obligations under the CBA, which Aircon refused. Petition ¶¶ 3–8, 18. The petitioners initiated an arbitration against Aircon, pursuant to the Trust Agreement incorporated into the CBA, but Aircon failed to appear and the arbitrator issued an award to petitioners on November 17, 2017 requiring Aircon to submit to an audit. Id. ¶¶ 9–18. The Union initiated this action against Aircon to enforce the arbitration award on March 27, 2018 and served Aircon with the summons and Petition on April 26, 2018. ECF Nos. 1, 9. Aircon failed to plead or otherwise respond to the Petition. The Union requested a certificate of default against Aircon on May 22, 2018, and on May 29, 2018, the Clerk of Court entered a certificate of default against Aircon. ECF Nos. 11, 12. Petitioners filed their motion for a default judgment pursuant to

Rule 55(b)(2) against Aircon on September 7, 2018, seeking enforcement of the arbitration award. ECF No. 13. On November 28, 2018 I issued a Report and Recommendation recommending that petitioners' motion should be granted; the Report was adopted by Judge DeArcy Hall on August 21, 2019. ECF No. 14; Docket Entry 08/21/2019. Judgment was entered against respondent on August 26, 2019, and respondent was ordered to submit its books and records to petitioners for an audit. ECF No. 16. Respondent did not submit to the audit and on April 22, 2021 petitioners filed this motion for a supplemental default judgment on damages. ECF No. 18.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Id.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993)). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Universal Elec. Corp., 970 F. Supp. 2d 108, 119 (E.D.N.Y. 2013). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

In evaluating a defendant's liability, the Court is limited to the four corners of the complaint. Rolls-Royce plc, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence submitted at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## I. Respondent's Liability under ERISA and the LMRA

The factual allegations in petitioners' submissions establish respondent's liability under ERISA and the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

4

29 U.S.C. § 1145. "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Trs. of the Local 7 Tile Indus. Welfare Fund v. City Tile, Inc., 10-CV-322 (SJ)(ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), adopted by, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

Here, petitioners allege that respondent is an employer, and that the Funds are "employee benefit plans" organized pursuant to ERISA. Pet. ¶¶ 4, 5. Petitioners provide the CBA between the parties which shows that respondent was required to make contributions to the Funds. CBA Art. 14, 16, 17. Following respondent's failure to comply with this Court's default judgment compelling respondent to submit to an audit, petitioners were permitted to prepare an estimate of the delinquency owed by respondent. See ECF No. 14; Docket Entry 08/21/2019. Petitioners estimated audit shows that respondent failed to make required contributions to the funds beginning in May of 2015 through November of 2017 (the "delinquency period").[1] Audit. 18-13.

These factual allegations are sufficient to establish respondent's liability under ERISA for the unpaid contributions. See Labarbera v. Frank J. Batchelder Transp. LLC, No. 08 CV 3387 (SJ)(JMA), 2009 WL 240521, at *3 (E.D.N.Y. Feb. 2, 2009) (finding liability based on allegations that defendant was a party to a CBA and failed to make required contributions).

Section 301(a) of the LMRA gives the Court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a). Petitioners allege that the Union is a labor organization pursuant to the LMRA and that respondent was obligated to contribute union dues, working assessment, and Labor Management Corporation payments pursuant to the CBA. Pet. ¶ 3; CBA Art. 13, ECF No. 18-11; Feldman Decl. ¶ 43, ECF No. 18-1; Audit Report, ECF No. 18-13. Thus,

---

[1] The Audit Report shows that respondent contributed $88.00 of union dues during this period, in March 2016. Audit Report, ECF No. 18-13.

5

petitioners' allegations are sufficient to establish liability under the LMRA as to the unpaid union dues, working assessment, and Labor Management Corporation payments. See Finkel v. Allstar Elec. Corp., No. 11-CV-3222 (KAM)(RER), 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the Required Contributions in accordance with their obligations under the CBAs.").

Petitioners' motion thus sufficiently establishes respondent's liability under ERISA and the LMRA for the Audit Period, May 1, 2015 through November 30, 2017. Accordingly, it is respectfully recommended that the Court should grant petitioners' motion for a default judgment.

## II. Damages

It is well established that a defendant's default amounts to an admission of liability for all well pleaded facts alleged in the complaint, *except* those relating to damages. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted); See also Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.") To determine the amount of damages or establish the truth of any allegation by evidence, the district court "may conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), but "detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing," Chanel, Inc. v. Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155). On a motion for a default judgment, a plaintiff has the burden to prove damages to

the Court with "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic, 109 F.3d at 111).

In cases where defendants have not produced books and records required for an audit, courts have awarded damages based on estimates consistent with the provisions of the parties' CBAs and trust agreements. See Gesualdi v. Interstate Masonry Corp., 11 CV 958, 2011 WL 7032900, at *6 (E.D.N.Y. Nov. 16, 2011), adopted as modified by, 2012 WL 27441 (E.D.N.Y. Jan. 4. 2012) (accepting plaintiffs' damages estimate on a motion for a default judgment as calculated by a formula in the parties' trust agreement); La Barbera v. Fed. Metal & Glass Corp., 666 F. Supp. 2d 341, 351 (E.D.N.Y. 2009) (same).

Petitioners' motion requests $125,097.95 in contributions, dues, assessments, fees, interest, and liquidated damages. As proof of damages, petitioners submit:

- The declaration of Elise Feldman, attorney for the petitioners ("Feldman Decl."), ECF No. 18-1.
- The declaration of Wei Mei, the payroll auditor for the United Welfare Fund ("Mei Decl."), ECF No. 18-9, which attaches:
    - The Delinquency Collection Guidelines ("Delinquency Guidelines"), ECF No. 18-10;
    - The Assumption Agreement and CBA ("CBA"), ECF No. 18-11;
    - The Fund Trust Agreement ("Trust Agreement"), ECF No. 18-12;
    - Estimated audit report ("Audit Report"), ECF No. 18-13; and
- A Bill of Costs (ECF No. 18-14).

Petitioners' submission of the governing CBAs and the estimated audit report provide sufficient evidence for the Court to calculate damages—for unpaid contributions, interest, and liquidated damages—for the requested period, May 1, 2015 through November 30, 2017. No evidentiary hearing is needed.

**A. Unpaid Contributions**

Pursuant to 29 U.S.C. § 1132(g)(2), the Funds are entitled to recover contributions that respondent failed to pay in accordance with its obligations under the CBA, interest on the unpaid

7

contributions, and liquidated damages on certain ERISA contributions as provided for under the relevant agreement.

The CBA requires Aircon to make contributions to three funds: the United Welfare Fund, the Union Security Fund, and the Apprentice Fund. CBA Art. 14, 16, 17. Aircon must make contributions to the Welfare Fund on the first calendar day of each month, for each employee who is on the payroll at the start of that month, although employees become eligible for different coverage at different stages of employment.[2] CBA Art. 14(a)(i). If Aircon is ten days delinquent on its contributions, the Union may serve a notice of delinquency upon Aircon, who then has ten days to cure the delinquency. Id. at (e). If Aircon does not cure the delinquency within that time, the Fund may suspend benefits for the employees, leaving Aircon responsible for alternative coverage for all employees as well as any losses the employees may incur. Id. Aircon's obligation to pay into the Security fund begins when an employee has worked for six months. CBA Art. 16(a). Aircon must make payments for each hour that a covered employee was paid and the amount of each payment is determined by the length of the employee's employment.[3] Id. Aircon is required to make payments to the Security Fund on or before the first of every month. Id. Aircon's obligation to pay into the Apprentice Fund begins after an employee has worked for thirty-one days, and Aircon must make payments of $1.00 per hour worked by a covered employee, due on the first of the month. CBA Art. 17(a).

Petitioners' submissions also allege that respondent was obligated to remit certain non-ERISA contributions under the LMRA, namely for union dues, working assessment, and Labor

---

[2] The CBA requires Aircon to provide single coverage to an employee who was worked for 60 days; Aircon must provide family coverage, dental, and life insurance to all employees who have worked for longer than six months. CBA Art. 14(a)(i), (iii).
[3] For an employee who has worked for Aircon for six months to two years, Aircon must contribute $0.50 per hour paid. From two years to five years, Aircon must contribute $1.25 per hour paid. From five years to nine years, Aircon must contribute $2.50 per hour paid. From nine years to fourteen years, Aircon must contribute $4.25 per hour paid. After fourteen years, Aircon must contribute $4.50 per hour paid.

8

Management Corporation payments. CBA Art. 13; Feldman Decl. ¶ 43; Audit Report. Respondent was required to fund the Labor Management Corporation with payments of $0.47 for each hour worked by a covered employee. CBA Art. 13. It is unclear from the petitioners' submissions how the amount of union dues and working assessment are individually calculated.

As discussed above, Aircon did not comply with the Court's order to submit its books and records to petitioners for an audit. Therefore, petitioners submit an estimated audit. Audit Report. Under the terms of the Delinquency Guidelines, the Fund Administrator may make a reasonable estimate of the amounts owed per month based on empirical data that may be available. Delinquency Guidelines, Sec. III.3.f. To estimate the money owed by Aircon, petitioners' auditor applied the amount paid by Aircon the last month they complied with their contribution obligations to every month during the delinquency period.[4] Mei Decl. ¶ 9.

The last month in which Aircon complied with its contribution obligations was April of 2015. Id. at ¶ 9. In total, Aircon paid $2,104.68 pursuant to its obligations that month.[5] Audit Report. The delinquency period is thirty-one months long. Id. Multiplying $2,104.68 by thirty-one months (minus $88.00 of union dues paid by Aircon in March of 2016) yields a total principal owed of $65,157.08.[6] Id. I have reviewed the report prepared by petitioners' auditor and find that

---

[4] While petitioners' auditor states that this estimate was prepared "in accordance with the powers accorded to the Trustees pursuant to the Trust Agreement and Delinquency Guidelines," the Court notes that this methodology is not outlined in the Delinquency Guidelines. Mei Decl. ¶ 9; Delinquency Guidelines, Sec. III.3.f. The Delinquency Guidelines state that an estimate is considered reasonable if it is based on the average number of hours or employees reported by the Employer in the last 12 months. Delinquency Guidelines, Sec. III.3.f. The Delinquency Guidelines also allow for recovery of an extra 50% of the amount determined by the audit. Id. Because the methodology used by petitioners' auditor is reasonable, the Court determines the damages here by using the estimate from petitioners' audit report, but notes that petitioners likely could have recovered more had they used the methodology outlined in the Delinquency Guidelines. Furthermore, while it is unclear how the union dues and working assessment obligations were calculated, the amount requested by petitioners is reasonable when compared to amounts paid by respondent in previous months.

[5] This total consisted of: $88.00 in union dues, $8.00 in working assessment, $36.00 in Apprentice Fund contributions, $24.00 in Labor Management Corporation payments, $1,758.00 in Welfare Fund contributions, $17.34 in administrative fees, and $173.34 in Security Fund contributions.

[6] This number consists of $61,731.54 in delinquent ERISA contributions, $2,640.00 in delinquent union dues, $248.00 in delinquent working assessment, and $537.54 in delinquent administrative fees. Bill of Costs, ECF No. 18-14.

it is a reasonable estimate of the contributions owed by Aircon for the period from May 2015 through November 2017. Therefore, I respectfully recommend that petitioners should be awarded $65,157.08 in unpaid contributions against respondent.

**B. Interest**

Petitioners are entitled to pre-judgment interest on the delinquent contributions. 29 USC § 1132(g)(2)(B). ERISA provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under 26 U.S.C. § 6621." 29 U.S.C. § 1132(g). The Delinquency Guidelines provide that interest should be calculated on delinquent contributions at a rate of 18% per year. Delinquency Guidelines, Sec. V. A.[7] Although the Delinquency Guidelines provide for a ten-day grace period before a payment becomes delinquent, they also provide that in the event of a delinquent payment, interest begins accruing on the day the payment was initially due. See Delinquency Guidelines, Sec. II. C. Therefore, interest began accruing on respondent's delinquent payments on May 1, 2015. Based on this, petitioners' auditor calculates that petitioners are owed a total of $47,635.85 in interest on the unpaid contributions. Audit Report. Although unexplained, petitioners' auditor calculated the interest due through July 2020.[8] Having reviewed petitioners' auditor's calculations for the accrual of interest for each missed monthly contribution, the Court finds that the auditor has correctly calculated the amount of interest owed from each missed payment through July 2020.

Petitioners are also entitled to pre-judgment interest from August 1, 2020 through the date

---

[7] Petitioners' auditor instead calculated the interest at 1.5% monthly, but the result is the same.
[8] For example, the interest owed on each monthly payment is $31.57 per month (1.5% of $2,104.68). For the first missed payment, due May 1, 2015, petitioners' auditor calculates $1,988.59 is owed in interest. This suggests that interest would have been accruing for 63 months, or through July 2020 (1,988.59 total interest ÷ 31.57 interest per month = 62.99 months).

judgment is entered by the Court. To determine that amount of interest, the Court calculates the daily interest owed on the entire principal: $32.13.[9] Therefore I recommend that petitioners should recover $47,635.85 in prejudgment interest as well as $32.13 per day from August 1, 2020 through the date the Court enters judgment herein.

### C. Liquidated Damages

Petitioners are entitled to liquidated damages on the unpaid ERISA contributions. 29 U.S.C. § 1132(g)(2)(C). ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the collective bargaining agreement (up to 20 percent liquidated damages of the delinquent contributions). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). The CBA entitles petitioners to 20% of the unpaid contributions in liquidated damages. Delinquency Guidelines, Sec. V. B. Petitioners request $12,305.02 in liquidated damages which equals 20% of the unpaid ERISA contributions to the Welfare, Security, and Apprenticeship Funds, as well as administrative fees as required by the CBA. Mei Decl. ¶¶ 12, 13; CBA Art 16–18. I recommend that petitioners should be awarded $12,305.02 in liquidated damages against respondent.

### CONCLUSION

Accordingly, it is respectfully recommended that petitioners' motion for a supplemental default judgment should be granted. Petitioners should be awarded $65,157.08 in unpaid ERISA and LMRA contributions, $47,635.85 in prejudgment interest, and $12,305.02 in liquidated damages for a total award of $125,097.95. Petitioners should also be awarded $32.13 in daily

---

[9] To calculate the daily interest rate that respondent owes, the Court multiplies the amount of unpaid contributions by the annual percentage rate (to obtain the yearly interest rate) and divides that number by 365 days. See Trustees of the Local 7 Tile Industry Welfare Fund, et al v. Tuscany Tile & Stone, Inc., 16-CV-1641 (LDH)(LB), 2017 WL 9939039 at *6 (E.D.N.Y. Nov. 13, 2017), adopted by, 2018 WL 158216 (E.D.N.Y. March 30, 2018). In this case, $65,157.08 x 0.18 ÷ 365 = $32.13.

11

interest from August 1, 2020 through the date the Court enters judgment.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 152 (1985).

SO ORDERED.

                                                                                      /S/
                                                LOIS BLOOM
                                                United States Magistrate Judge

Dated: October 5, 2021
       Brooklyn, New York